**SPANGLER, JENNINGS & DOUGH-ERTY P.C., Appellant (Plaintiff Below),**

v.

**INDIANA INSURANCE CO., Appellee (Defendant Below).**

No. 71S03–9806–CV–359.

Supreme Court of Indiana.

May 25, 2000.

---

**17.** The contrary holding in *Thomas v. State,* 684 N.E.2d 222 (Ind.Ct.App.1997), is disap- proved.

Robert D. Brown, Merrillville, Indiana, Attorney for Appellant.

Philip E. Kalamaros, South Bend, Indiana, David M. Mattingly, David J. Mallon, Jr., Christopher S. Sears, Brent W. Huber, Indianapolis, Indiana, Attorneys for Appellee.

Robert A. Fanning, Julia Blackwell Gelinas, Indianapolis, Indiana, Attorneys for Amicus Curiae, The Insurance Institute of Indiana, Inc., The American Insurance Assn., The National Assn. of Independent Insurers, The Indiana Self–Insurers Assn., Inc., and the Indiana Manufacturers Assn.

SHEPARD, Chief Justice.

What fee must an employer or its worker's compensation insurance carrier pay the attorney who represents an injured employee in a suit against third-party tortfeasors? The Indiana law firm of Span-

gler, Jennings & Dougherty appears to desire one-third of the amount already paid by the carrier, plus one-third of the amount collected from third-party tortfeasors but not reimbursed to the carrier, plus one-third of future medical expenses the carrier would have paid but for the tort recovery. We conclude otherwise.

## I. Factual Background and Procedural History

In December 1988, Kirk Weidenaar was rendered a quadriplegic during the course of his employment at Korellis Roofing. The worker's compensation carrier for Korellis, Indiana Insurance Company, paid Weidenaar's medical expenses and weekly wage replacement until Weidenaar filed a claim for worker's compensation benefits. After he claimed benefits, Weidenaar and Indiana Insurance stipulated that the carrier was obligated to pay Weidenaar 500 weeks of worker's compensation benefits and "any additional medical as pursuant to the provisions of the Worker's Compensation Act." (R. at 25, 98.) They presented this stipulation to the Worker's Compensation Board, which approved and incorporated it into the Board's award on July 6, 1992.

Weidenaar thereafter hired Spangler, Jennings & Dougherty, P.C. to sue Amoco Oil Company and Northern Indiana Public Service Company (NIPSCO) as tortfeasors who contributed to his injury. The suit resulted in a jury verdict against both companies. Spangler then negotiated a post-judgment settlement. Indiana Insurance paid Weidenaar's medical expenses until it received notice of the settlement.

In dispersing the proceeds of the settlement with Amoco and NIPSCO, Weidenaar paid one-third of the settlement to Spangler as attorney's fees.[1] He also reimbursed Indiana Insurance for the benefits it had already paid him.[2] The record does not make clear the order of these payments.[3] (*Compare* Appellee's Trans. Br. at 2–3 n. 5 *with* Appellant's Trans. Br. at 2–3.) It is likewise unclear whether a Spangler fee was deducted from the lien the carrier held against Weidenaar's tort recovery.[4]

In any event, Spangler sued Indiana Insurance for attorney's fees, claiming the carrier owed the law firm one-third of the amount of the medical expenses Indiana Insurance would have paid but was saved due to Spangler's work on the third-party suit. (R. at 7–8; Appellant's Br. at 7.)

On cross-motions for summary judgment, the trial court granted judgment to Indiana Insurance, and Spangler appealed. The Court of Appeals reversed and remanded, with instructions to grant summary judgment in Spangler's favor instead. *Spangler, Jennings & Dougherty v. Indiana Ins. Co.*, 685 N.E.2d 705 (Ind. Ct.App.1997). We granted transfer.

## II. Indiana's Worker's Compensation System

Indiana's present worker's compensation system was "essentially established [by] the Workmen's Compensation Act of 1929." *Evans v. Yankeetown Dock Corp.*, 491 N.E.2d 969, 971 (Ind.1986). Prior to worker's compensation, workers were faced with harsh common law. *Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 297 N.E.2d 425, 427 (1973). "The employ-

1. Pursuant to their contingency fee agreement. (R. at 82–83.)

2. Pursuant to the Worker's Compensation Act. Ind.Code Ann. § 22–3–2–13 (West 1991).

3. Did Weidenaar reimburse Indiana and then pay Spangler one-third of the remainder, or did he pay Spangler first, and then reimburse the carrier out of the remainder?

4. Indiana Insurance asserts that it paid Spangler one-third of the reimbursement it received from Weidenaar as its pro-rata share of the attorney's fees. (Appellee's Trans. Br. at 2–3 n. 5 (citing R. at 138–40).) Spangler claims that the assertion is "absolutely false," (Appellant's Trans. Br. at 2), and that there is nothing in the record to indicate it "double dipped" in the manner of the carrier's "false accus[ation,]" (*see id.* at 2–3).

ee's only remedy was an action in tort against the employer[,] ... which w[as] rarely successful" due to employer-friendly common law defenses. *Id.*

A. *Purpose of Worker's Compensation.* With the enactment of the worker's compensation system, "workers who were previously precluded from recovery under common law theories are [now] guaranteed compensation." *Walker v. State,* 694 N.E.2d 258, 268 (Ind.1998). Employers must "provide limited compensation to workers whose injuries arise out of and in the course of [their] employment, regardless of fault." Note, Charles Richard O'Keefe, Jr., *The Guides to the Evaluation of Permanent Impairment and Worker's Compensation in Indiana,* 27 Ind. L.Rev. 674, 649 (1994). "In return for the employer's payment of benefits, the employer is given immunity from civil litigation with his employee." Stephen E. Arthur, 11 Ind. Practice § 119.01 at 241 (Supp.1999) (citations omitted). "The scheme is ... social legislation designed to aid workers and their dependents and 'shift the economic burden for employment related injuries from the employee to the employer and consumers of its products [and services].'" O'Keefe, *supra,* 27 Ind. L.Rev. at 649–50; *see also Collins v. Day,* 604 N.E.2d 647, 648 (Ind.Ct.App.1992), *aff'd on other grounds,* 644 N.E.2d 72 (Ind.1994).

B. *Third-party Actions.* In addition to shifting the cost of injuries from worker to employer to achieve social policy goals, the Worker's Compensation Act also provides a way to seek compensation from third-parties who caused injuries. "The concept underlying third party actions is the moral idea that the ultimate loss from wrongdoing should fall upon the wrongdoer." Arthur Larson & Lex K. Larson, 6 Larson's Workers' Compensation Law § 71.10 at 14–1 (1999).

Historically, some states required workers to elect at the outset whether to seek compensation benefits or pursue a third-party action. If an employee thought his injury arose in the course of his employment, and applied for compensation, but was incorrect, he was precluded from suing the third-party. Now, however, an employee can accept compensation benefits while pursuing a third-party action; at the completion of that action, the employee may, in effect, keep whichever is worth more.

 In worker's compensation third-party actions, as in other tort settings, the comparative fault of the injured employee-plaintiff is factored into the final judgment or settlement. And, while the employee is generally required to repay the worker's compensation carrier for benefits and expenses paid while the employee pursued the third-party action, the amount of that reimbursement is likewise reduced by the amount of the employee's comparative fault. Ind.Code Ann. § 22–3–2–13 (West 1991); Ind.Code Ann. § 34–51–2–19 (West 1999).

C. *The Interplay Between Compensation and Third-party Actions.* The worker's compensation system does not necessarily provide the kind of complete recovery an injured employee might receive in a third-party action. On the other hand, it provides compensation even when the tort system would give no recovery at all (as in cases whether no one has acted negligently). It is also reasonably prompt. While it could take years to reduce a third-party claim to judgment, the Worker's Compensation Act requires that the employer provide medical treatment before the adjudication of permanent impairment. Ind.Code Ann. § 22–3–3–4 (West Supp.1999).

In some instances, as in this case, a worker's compensation insurance carrier begins to pay benefits to the injured employee before he even files a claim. (Appellant's Br. at 4 (citing Dep. of David E. Peiffer at 29–3[1] ).) Worker's "compensation legislation has evolved from efforts to ameliorate the inequitable and often devastating effects of industrial accidents on the labor force.... Work[er]'s compensation

is intended to provide an *expeditious* remedy which will *guarantee* the injured employee some recovery for an industrial accident." Arthur, *supra,* 11 Ind. Practice § 119.01 at 246 (emphasis added) (citations omitted).

■ Of course, compensation under the worker's comp scheme is calculated on a different basis than the damages awarded in a third-party action. Compensation benefits are not awarded as "damages for pain, suffering or other monetary loss." *Id.* at 247 (citations omitted). The "benefits are intended to replace the future wages that the employee would earn if he were able to continue to work."[5] *Leisure v. Leisure,* 605 N.E.2d 755, 758–59 (Ind. 1993). The amount of this compensation is not determined by jury, but rather by statute,[6] and may well be less than what the injured could receive from the guilty tortfeasor.[7]

This compensation may, however, be the most complete recovery a plaintiff can obtain if, for example, there is no third-party tortfeasor to sue, or the plaintiff's injury resulted primarily from his own fault.

■ The worker's compensation provision governing claims against third persons, Ind.Code § 22–3–2–13, provides a plaintiff the opportunity to choose between worker's compensation and third-party judgments in some situations, so that he might maximize the recovery. If the final judgment in a suit brought by an injured employee is *less than* the amount of the worker's compensation benefits and medical expenses, the employee can choose to accept the judgment and reimburse the worker's compensation payor, or to assign all rights to the judgment to the worker's compensation payor, and continue to accept the benefits as prescribed by the Board. Ind.Code Ann. § 22–3–2–13 (West 1991).[8]

■ If through settlement or litigation an employee obtains an amount that is *more than* the worker's compensation benefits, then the employee must reimburse the worker's compensation payor and keep the remainder of the judgment or settlement, thereby relinquishing all right to the compensation benefits. *Id.*[9] Because an

5. The injured employee may also collect medical expenses. *See* Ind.Code Ann. § 22–3–3–5 (West Supp.1999).

6. "The schedule of benefits recoverable under the work[er]'s compensation act is set forth at [Ind.Code Ann. § ] 22–3–3–10." Stephen E. Arthur, 11 Ind. Practice § 119.01 at 246 (Supp.1999).

7. Most states "give the employer so much of the negligence recovery as is necessary to reimburse him for his compensation outlay, and to give the employee the excess. This is fair to everyone concerned: the employer, who, in a fault sense, is neutral, comes out even; the third person pays exactly the damages he would normally pay, which is correct, since to reduce his burden because of the relation between the employer and the employee would be a windfall to him ...; and the employee gets a fuller reimbursement for actual damages sustained than is possible under the compensation system alone." Arthur Larson & Lex K. Larson, 6 Larson's Workers' Compensation Law § 71.20 at 14–7—14–13 (1999) (footnote omitted).

8. The statute provides in relevant part:

In the event any injured employee ... shall procure a final judgment against the [third-party] *other than by agreement,* and the judgment is for *a lesser sum than* the amount for which the employer or the employer's compensation insurance carrier is liable for compensation and for medical ... services and supplies, as of the date the judgment becomes final, then the employee ... shall have the option of either collecting the judgment and repaying the employer or the employer's compensation insurance carrier for compensation previously drawn ... and for medical ... services and supplies previously paid, ... or of assigning all rights under the judgment to the employer or the employer's compensation insurance carrier and thereafter receiving all compensation and medical ... services and supplies[ ] to which the employee ... would be entitled if there had been no action brought against the other party.

Ind.Code Ann. § 22–3–2–13 (West 1991) (emphasis added).

9. The statute provides in relevant part:

[I]f the action against the [third-party] is brought by the injured employee ... and

injured employee must choose between the third-party judgment and the worker's compensation benefits and medical expenses, or in some instances, because the legislature makes that choice for the employee, there is no reason an attorney should recover a percentage of the whole of both awards.

■ Of course, a carrier must pay a fee to the injured employee's lawyer for collecting on its lien by conducting the third-party litigation. Whether it must pay fees on anything else is the subject of this litigation.

### III. Attorney's Fees in Third-party Actions

*A. The Statute.* Indiana Code § 22–3–2–13 discusses the fee to which an attorney is entitled when retained by an injured employee to sue a third-party tortfeasor, saying:

> The employer or the employer's compensation insurance carrier shall pay its pro rata share of all costs and reasonably necessary expenses in connection with asserting the third party claim, action or suit, including but not limited to cost of depositions and witness fees, and to the attorney at law selected by the employee or his dependents, a fee of twenty-five per cent (25%), if collected without suit, of the amount of benefits which *benefits shall consist of the amount of reimbursements,* after the expenses and costs in connection with the third party claim have been deducted therefrom, and a fee of thirty-three and one-third per cent (33 1/3%), if collected with suit, of the amount of *benefits* after deduction of costs and reason-

ably necessary expenses in connection with the third party claim[,] action or suit.

(emphasis added).

We think the term "benefits" discussed in the "with suit" situation in Ind.Code § 22–3–2–13 has the same meaning as the "benefits" defined earlier in that very same sentence (in the "without suit" situation). Ind.Code Ann. § 22–3–2–13 (West 1991). Whether the claim is resolved with or without suit, the benefits are the same: reimbursements.

Our Court has already spoken on the meaning of the term "reimbursements", in *Indiana State Highway Comm'n v. White,* 259 Ind. 690, 694, 291 N.E.2d 550, 553 (1973). In *White,* a widow had been collecting weekly worker's compensation benefits from the insurance carrier of her deceased husband's employer, pursuant to a Worker's Compensation Board award. She also pursued a third-party tortfeasor, with whom she settled before trial. She reimbursed the worker's compensation carrier the sum it had paid her prior to the settlement. The carrier was thus required to pay her attorney his percentage (25% of the "reimbursements," according to Ind. Code § 22–3–2–13). The insurance carrier contended that it owed fees only for the amounts it actually paid to White, that is, on the amount of its lien.

Justice DeBruler, writing for the Court, disagreed. After deciding that the term "reimbursements" was ambiguous, necessitating judicial interpretation, *id.* at 553, he concluded that "in a case such as this" the term is to be construed as the entire award, not just the sum already paid out

judgment is obtained and paid, and accepted or settlement is made with the other person, either with or without suit, then from the amount received by the employee ... *there shall be paid* to the employer or the employer's compensation insurance carrier, subject to its paying its pro-rata share of the reasonable and necessary costs and expenses of asserting the third[-]party claim, the amount of compensation paid to

the employee ..., plus the medical ... expenses paid by the employer or the employer's compensation insurance carrier and the liability of the employer or the employer's compensation insurance carrier to pay further compensation or other expenses shall thereupon terminate.
Ind.Code Ann. § 22–3–2–13 (West 1991) (emphasis added).

by the employer or its insurance carrier at the time the third-party settlement became final. *See id.* at 554.[10] We held, therefore, that the term "reimbursements" meant the entire worker's compensation award.

Spangler argues that *White* supports its claim of entitlement to a fee on the future medical expenses. We disagree.

The distinguishing factor between the future medical expenses in the present case and the future worker's compensation benefits in *White* is that the benefits in *White* were readily ascertainable. White died while acting within the scope of his employment. His death effectively fixed the amount of medical and funeral expenses and weekly wage benefits. Because Weidenaar was gravely injured, however, his medical expenses will be ongoing. To receive a fee on those unascertained expenses, Spangler would have to prove their value. Litigating that value would be a task of some consequence; the briefs before us demonstrate that the present parties disagree how such expenses should be measured, let alone what the facts might be. Spangler is unlikely to expend its resources to make such a showing because, as we will explain, there is no way to pay the firm a fee for doing so without paying it twice for delivering the same dollar to the client.

■ B. *One Complete Fee.* The fact that the insurance carrier must pay fees on the whole worker's compensation award does not mean that the injured employee's attorney may keep a fee on the award in addition to the percentage of the third-party judgment he should receive. The attorney's entire fee for a third-party action should be no more than a percentage of the whole third-party judgment or settlement.[11]

■ Limiting Spangler's recovery from Indiana Insurance to a percentage of the carrier's lien provides Spangler one complete fee for its part of the work: the third-party action that benefits both Weidenaar and Indiana Insurance. If an attorney could keep a percentage of both the entire third-party judgment and a percentage of the future medical expenses the carrier would have paid but for the third-party tort action, that lawyer would be paid twice for the same dollar recovered. When an attorney sues for an injured employee, he has only one chance to sue the third parties for his client's injury and must necessarily seek compensation for all of the client's damages, economic (such as lost future wages and medical expenses) and non-economic (such as pain and suffering). Ordinarily, whatever the attorney obtains for his client, the client uses to reimburse the worker's compensation carrier and pay attorney's fees. The client

10. The "entire award" was $818.85 medical and hospital expenses, $768.00 funeral expenses, and $19,440.00 weekly compensation benefits, totaling $21,026.85. *White,* 259 Ind. at 692, 291 N.E.2d at 552.

11. The percentage the employee-client must pay is determined by the contingency fee agreement between attorney and client, and the percentage the employer or its compensation insurance carrier must pay is determined by Ind.Code § 22–3–2–13. Often these two percentages are the same, as in this case. Contingency fee agreements frequently state a fee of one-third of a judgment or settlement if collected with suit, and one-quarter of the judgment or settlement if collected without suit; Ind.Code § 22–3–2–13 provides for the same fractions in those same situations.

An injured's attorney who has pursued a third-party tort claim may not, however, receive both a contingent fee on the carrier's subrogation lien *and* a similar contingent fee on the whole of the tort recovery, absent an explicit permissible arrangement with the client. "Had the legislature intended for the in[j]ured's attorney to retain *an additional* amount on top of the agreed contingent fee, it would not have identified the insurer's cost sharing obligation as a 'pro-rata' share of the cost of representation resulting in settlement." *In re Lehman,* 690 N.E.2d 696, 703 (Ind.1997); *see also Erie Ins. Co. v. George,* 681 N.E.2d 183, 194 n. 17 (Ind.1997) (discussing possible double recovery under Ind. Code § 34–4–41–2).

then keeps the remainder.[12]

■ Both economic and non-economic damages are subject to the reimbursement/lien of the worker's compensation carrier. *Dearing v. Perry*, 499 N.E.2d 268, 270 (Ind.Ct.App.1986). An injured employee cannot sue a third-party for non-economic damages and then try to avoid the carrier's lien on the ground that the lien is meant to reimburse the carrier for the economic damages of wage loss and medical expenses. *Id.* If an attorney does not sue for all types of damages, economic and non-economic, when the lien is finally paid, his client will be left with an incomplete recovery. *Cf. Wedel v. American Elec. Power Service Corp.*, 681 N.E.2d 1122, 1131 (Ind.Ct.App.1997), *trans. denied.*

Because we presume that Spangler did its job, we assume that the future medical expenses were part of the verdict that Spangler won for Weidenaar, and upon which it negotiated a settlement. If Spangler could collect one-third of the entire third-party settlement and also keep one-third of the future medical expenses that should have been included in that settlement, Spangler would indeed be "double dipping." [13]

*C. Channeling the Excess Fees to the Client.* Spangler should have already received one-third of the third-party judgment, in part from Weidenaar, and in part from Indiana Insurance.[14] Any fee Indiana Insurance pays the law firm on future medical expenses must, therefore, be forwarded to the client. We explained the reason for this in White:

12. The client can choose to continue receiving the worker's compensation benefits only if he did not settle with the third parties and if the judgment is less than the worker's compensation benefits. Ind.Code Ann. § 22–3–2–13 (West 1991). In all other instances, the client must keep the third-party judgment or settlement and use it to reimburse the entity that paid his worker's compensation benefits (the employer or its compensation carrier) and to cover all of his future expenses. *Id.*

13. Such would not be the case when an attorney receives a fee under Ind.Code § 22–3–4–12 for litigating an insured's case before the Board and then performs the separately productive duty of pursuing a third-party tort claim for the benefit of the injured and/or carrier.

14. Disregarding, for the purposes of this footnote, any fee on the future medical expenses, and to ensure that both Weidenaar and Indiana Insurance pay their shares and no more, we illustrate the proper payment procedure in the ordinary worker's compensation third-party judgment situation: First, the injured employee is paid by the third-party. The insurance carrier's lien against that third-party judgment/settlement attaches to it. If a jury has determined the employee's percentage of comparative fault, the third-party settlement of the judgment and the lien are reduced by this percentage. *Weidenaar v. Indiana Ins. Co.*, 874 F.Supp. at 236–37. Next, the employee pays the carrier's lien out of the third-party judgment, holding out a fee (determined by Ind.Code § 22–3–2–13) for the

work his attorney did in collecting the funds being reimbursed. Then, the employee pays his attorney a percentage of what remains of the third-party judgment or settlement (determined by their written contingency fee agreement). The employee and the carrier thus join in paying the attorney a percentage of the entire third-party settlement: in this case, one third of the settlement minus the lien from Weidenaar, plus one third of the lien from Indiana Insurance.

The parties disagree as to whether Spangler has received one third of the reimbursement. (*Compare* Appellee's Trans. Br. at 2–3 n. 5 *with* Appellant's Trans. Br. at 2–3.) On remand, we direct the trial court to determine this issue. It is additionally unclear when Spangler received its one-third of the third-party settlement. (*See* R. at 82–83 ("The Weidenaars did pay as compensation[ ] a contingent fee of one-third of the monies actually collected [from the third parties].").) If Weidenaar paid Spangler before Indiana Insurance's lien was satisfied as the record on appeal suggests, Weidenaar may have paid Spangler a cut of the entire third-party judgment, which we hold should be paid by *both* Weidenaar and Indiana Insurance. In this instance, Weidenaar would have paid more than his share of Spangler's fee. Moreover, once Spangler also collects a cut of the reimbursement from Indiana Insurance, it will be overpaid. If this occurred, to rectify Weidenaar's overpayment and Spangler's overcompensation, we direct the trial court to order that Indiana Insurance's payment to Spangler be paid to Weidenaar.

[T]he purpose the Legislature had in mind [when it enacted § 22–3–2–13] ... was to free the injured workman ... from paying attorney['s] fees for legal services for recovering the equivalent of the employer or compensation insurance carrier subrogation claim. In effect, the Legislature intended that the ultimate recovery of the employee should not be diluted by having to pay that portion of the attorney['s] fees required to collect that, which the injured employee ... [is] entitled to collect under a compensation award, without any suit or settlement.

*White,* 259 Ind. at 695–96, 291 N.E.2d at 553–54. In other words, the injured employee should not have to pay attorney's fees on the worker's compensation award, because the employee should get those fixed benefits without doing anything at all.

Weidenaar's worker's compensation award included a segment of fixed-value, weekly payments, upon which Indiana should pay an attorney's fee under the rule of *White.* If Spangler has not yet received the fee to which it was entitled under its agreement with Weidenaar and Ind.Code § 22–3–2–13, then this amount goes to Spangler. Otherwise, it goes to the client.

### Conclusion

We affirm the decision of the trial court insofar as medical expenses are concerned and remand the case for proceedings concerning fees that relate to weekly worker's compensation payments.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ. concur.